IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:07-CV-275-D

| | | |
|---|---|---|
| SILICON KNIGHTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| EPIC GAMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on a number of pending motions: (1) the first motion by plaintiff/counterclaim defendant Silicon Knights, Inc. ("plaintiff") to compel discovery responses (DE #59); (2) plaintiff's second motion to compel (DE #70); (3) the first motion by defendant/counterclaim plaintiff Epic Games, Inc. ("defendant") to compel production of documents (DE #83); (4) defendant's second motion to compel (DE #99); and (5) the parties' joint motion to amend/correct the Scheduling Order (DE #93). For the reasons set forth below, the court will allow all the motions except plaintiff's first motion to compel, which will be allowed in part and denied in part.

## Background

Plaintiff commenced this lawsuit against defendant alleging breach of contract, fraud, and other claims in connection with a non-exclusive license that plaintiff purchased from defendant for use of a piece of software called Unreal Engine 3 ("UE3"), which was a so-called game engine used to develop video games. (*See generally* Compl. (DE #1) ¶¶ 1, 5, 8, 14-15). Specifically, plaintiff claims that defendant failed to provide plaintiff with properly functioning software or support for the software as defendant had promised. (*Id.* ¶¶ 14-15). Plaintiff further alleges that defendant intentionally misrepresented to plaintiff and other licensees the capabilities of the software and

defendant's ability to support it as part of a fraudulent scheme to undermine the licensees' development of their own video games. (*See id.* ¶¶ 15-16). Defendant, in turn, claims that plaintiff infringed on defendant's trade secrets and copyrighted materials in developing its games. (*See* Counterclaim (DE #8), p. 1). Defendant has asserted counterclaims for copyright infringement, breach of contract, misappropriation of trade secrets, and a constructive trust. (*Id.*).

In the course of discovery, a number of disputes have arisen between the parties which resulted in the filing of the pending motions. The court held a hearing on the motions and has reviewed carefully the extensive filings by the parties on the motions. Following a discussion of the standard applicable to motions to compel, the court will address each pending motion in turn.

## Discussion

Rule 26 allows parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b). Relevant information need not be admissible at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence. *See id.*; *Hinton v. Conner*, 225 F.R.D. 513, 515 (M.D.N.C. 2005) (Rule 26 provides that "a party may obtain discovery of any non-privileged matter relevant to a claim or defense, but that such information need not be admissible at trial so long as it appears to be 'reasonably calculated to lead to the discovery of admissible evidence.'") (*quoting* Fed. R. Civ. P. 26(b)(1)). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Rodger v. Elec. Data Sys., Corp.*, 155 F.R.D. 537, 539 (E.D.N.C. 1994) (citations omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (*quoting Hickman v. Taylor*, 329

2

U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to set appropriate limits on the discovery permitted. *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005).

**Plaintiff's First Motion to Compel (DE #59)**. By this motion, plaintiff seeks an order compelling defendant to respond to plaintiff's Interrogatories Nos. 9-13 and Requests for Production Nos. 11-109, 111, 118, 127-129 and 131-137.[1] These discovery requests fall into a number of categories, each of which is discussed separately below. The motion is ALLOWED IN PART and DENIED IN PART on the terms discussed. All the production ordered shall be made by 14 July 2008, except that production of the material subject to paragraph 1 shall be made by 7 July 2008.

1. <u>The identity of defendant's Unreal Engines ("UE") licensees (Interrogatory No. 9) and all UE license agreements (odd-numbered Requests for Production between Nos. 11 and 41 (first) inclusive; even-numbered Requests for Production between Nos. 42 and 108 inclusive; and Request for Production No. 136)</u>. In response to these requests, defendant has offered to produce the license agreements of all licensees of UE3 subject to redaction of the licensees' names and the amount of the fees charged. In addition, defendant states that it has already produced a list identifying all of its UE3 licensees and a chart summarizing fee-related terms during the six-month period surrounding the effective date of plaintiff's license. Defendant justifies its proposed redactions from the license agreements on the principal grounds that plaintiff has no legitimate need to match license agreements with particular licensees and that disclosure of the fee and other license

---

[1] Plaintiff's Interrogatories Nos. 9-13 (comprising plaintiff's second set of interrogatories) can be found at DE #60-3 and defendant's responses at DE #60-5. Plaintiff's Requests for Production Nos. 11-137 (comprising plaintiff's "third" set of requests for production) can be found at DE #60-4 and defendant's responses at DE #60-6. The discovery requests among these which are subject to the instant motion are reproduced in a separate document found at DE #59-2, which includes defendant's responses and plaintiff's comments on the responses.

3

terms when associated with particular licensees would present significant competitive concerns notwithstanding the entry of the Protective Order (DE #54) in this case.

Plaintiff contends that the proposed redactions from the license agreements are unwarranted because, among other reasons, the experience of other licensees could provide relevant information regarding the capabilities of UE3 and the ability and intent of defendant to support it, and that the experience of other licensees cannot be properly assessed without knowing the rights and obligations of the respective parties under their license agreements. Plaintiff further contends that allegations by defendant in its counterclaims that licensees other than plaintiff had a good experience with UE3 make unredacted license agreements relevant. With respect to pricing information, plaintiff contends that such information needs to be tied to particular licensees to enable plaintiff to explore defendant's contention that plaintiff was provided a discounted price as defendant alleges in its counterclaims.

The court finds that redaction of the names from the license agreements is inappropriate for the reasons advanced by plaintiff, as set out above. Plaintiff needs to be able to associate particular license agreements with particular licensees to be able to effectively assess the experience of other licensees with UE3 and defendant's support of it. Defendant did not demonstrate that giving plaintiff the ability to match licensees with particular licenses would, in fact, result in competitive harm or unreasonably intrude into defendant's relationships with its licensees, especially in light of the protections available under the Protective Order in this case.

Although the instant discovery requests appear to relate to all versions of UE, the court finds that the present record shows that only information relating to UE3 is directly relevant in this case. There has been no showing that the prior versions and any problems incurred with them, including any problems associated with porting over from one piece of hardware to another, are sufficiently

4

similar to UE3 that compelling extensive discovery regarding the other versions is justified. Indeed, referring to UE3, plaintiff itself states in the complaint: "It is that version of the Engine that is at issue now . . . ." (Compl. ¶ 49). The court will therefore require production of license agreements solely for UE3. The determination that only UE3 and not other versions of UE are directly relevant is reflected in the other rulings set forth herein without further discussion of the issue.

With respect to fee amounts, the court does not believe that plaintiff has adequately demonstrated the need for it to be able to match such amounts to particular licensees. Defendant's alleged provision of a discount to plaintiff is a tangential issue in this case. In addition, the pricing information which defendant represents it has already produced should provide plaintiff substantial information regarding the existence and extent of any discount it received.

The court accordingly orders defendant to respond to plaintiff's Interrogatory No. 9 by providing all the information requested regarding licensees of UE3 and to the instant requests for production by producing all the license agreements for UE3, provided that defendant may redact the fee amounts in such agreements.

2. <u>The identity of all persons who complained about any version of UE (Interrogatory No. 13) and all correspondence, memoranda, emails, and other documents referring or relating to any complaint about any license agreement with defendant (Request for Production No. 111)</u>. Plaintiff contends that complaints by other licensees of UE3 are relevant to, among other issues in dispute, the capabilities of UE3 and of defendant to support it, and defendant's knowledge and intent with respect to such capabilities. Defendant contends that since the subject of this case is only the relationship between plaintiff and defendant, complaints by other licensees are not relevant. Defendant notes that, in any event, plaintiff already has access to complaints and associated

5

communications by other UE3 licensees through the Unreal Developers Network ("UDN"), an internet-based network for communication among defendant and UE licensees.

The court believes that certain complaints by other licensees and the related communications are sufficiently related to this case to make the materials sought regarding them discoverable. Such complaints are those relating to the same types of problems plaintiff allegedly experienced with UE3 and defendant's support of it, including alleged discrepancies between defendant's alleged representations and knowledge about the capabilities of UE3 and defendant's support of it, and plaintiff's alleged experience with UE3 and defendant's support of it. (These types of problems are referred to collectively as the "Alleged UE3 Problems"). This group of complaints is significantly narrower than that subject to the instant discovery requests, which encompass complaints regarding all versions of UE and any problems with it or defendant's support of it. The court finds this broader group to include complaints not shown to have sufficient bearing on the claims or defenses in this case to make the materials sought discoverable. The court does not believe that narrowing the scope of complaints defendant must produce places an undue burden on defendant, especially since the posting of complaints on the UDN appears to reduce substantially the volume of documents that will have to be reviewed for production.

At the same time, the court rejects the contention that plaintiff's access to the UDN obviates its requests for complaints. As discussed at the hearing, the UDN does not necessarily include all complaints that may be discoverable because defendant provides for complaints to be submitted to it by licensees confidentially outside the UDN.

The court accordingly orders that defendant respond to plaintiff's Interrogatory No. 13 by providing all the information requested but limited to complaints (including expressions of

6

dissatisfaction) about the Alleged UE3 Problems and that defendant respond to plaintiff's Request for Production No. 111 by producing all the documents requested but limited to those referring or relating to the Alleged UE3 Problems. Defendant shall include in its response to Request for Production No. 111 a statement of the matters it deems to be Alleged UE3 Problems for the purpose of responding to the instant discovery requests and to the other applicable discovery requests subject to this Order, and the methodology it used to search for the material sought in the instant discovery requests. Plaintiff shall confer with defendant about identifying matters which constitute Alleged UE3 Problems. As with any other discovery requests, defendant retains the option to make production broader than that required if it wishes to forego the effort necessary to make the mandatory, more focused production.

3. <u>All communications between defendant and licensees of defendant relating to the use of UE3 and all documents relating to such communications (Request for Production No. 131)</u>. Because the court has addressed complaints separately, it will treat this request as seeking the specified communications other than those producible as complaints pursuant to Request for Production No. 111. The contentions of the parties regarding such non-complaint communications between defendant and licensees are analogous to those regarding complaints.

The court finds that non-complaint communications between defendant and UE3 licensees regarding the Alleged UE3 Problems are relevant and discoverable. Of particular relevance would appear to be representations by defendant to other licensees about the pertinent capabilities of UE3 and of defendant to support it. The full expanse of documents sought by the request is excessive and unduly intrusive because it seeks non-complaint communications bearing on defendant's customer relations irrespective of subject matter. The court accordingly orders that defendant respond to

7

plaintiff's Request for Production No. 131 by producing all non-complaint communications between defendant and UE3 licensees referring or relating to the Alleged UE3 Problems and all documents referring or relating to such communications.

4.  <u>Any and all correspondence, memoranda, emails, and other documents referring or relating to any UE license agreement between defendant and a UE licensee (even-numbered Requests for Production between Nos. 12 and 41 (second) inclusive; odd-numbered Requests for Production between Nos. 43 and 109 inclusive; and Request for Production No. 137)</u>. These production requests obviously overlap with other more specific requests discussed elsewhere in this Order. The same determinations regarding discoverability apply. The court accordingly orders that defendant respond to the instant production requests by producing all the documents sought referring or relating to the Alleged UE3 Problems.

5.  <u>Description of each "Enhancement" to UE within the meaning of defendant's license agreements (Interrogatory No. 10) and all documents relating to all such "Enhancements" (Request for Production No. 134)</u>. Plaintiff contends that it is entitled to obtain the requested material regarding "Enhancements" to UE made by defendant's licensees because the experience of other licensees may be useful in establishing the meaning of "Enhancements" as that term is used in the license agreement between plaintiff and defendant. Plaintiff discusses the term "Enhancements" as one example of how license agreement documents from other licensees could assist in establishing the meaning of terms used in the license agreement between plaintiff and defendant. Defendant counters that the terms of other license agreements are not relevant to the agreement between defendant and plaintiff, the term "Enhancements" is defined in the license agreement between

8

plaintiff and defendant, and the documents plaintiff requests are not all responsive to the claimed purpose of interpreting "Enhancements."

The court finds that plaintiff has failed to establish that the requested documents are properly discoverable at this time. It has not been shown that there exists a dispute focused on the meaning of the term "Enhancements," as opposed to particular enhancements themselves, that justifies the broad discovery sought. Defendant states that to the extent custom and usage ever became relevant, it would produce any documents referring to the meaning or interpretation of the term "Enhancements" as used in the UE3 license agreements. (*See* Def.'s Mem. (DE #62), p. 5). That point has not been reached. Defendant need not produce at this time any documents in response to plaintiff's Interrogatory No. 10 or Request for Production No. 134.

6. <u>All documents reflecting defendant's plans or strategies to provide support for the licensees of UE3 (Request for Production No. 133)</u>. This request goes to the core of plaintiff's claims. The court accordingly orders that defendant respond to plaintiff's Request for Production No. 133 by producing all documents referring or relating to defendant's plans or strategies to provide support for the licensees of UE3.

7. <u>The identity of all third-party software, including middleware, used by defendant as part of or in any capacity with any UE engines (Interrogatory No. 11); the identity of all persons whose software is included in defendant's Integrated Partners Program ("IPP") (Interrogatory No. 12); all documents relating to IPP (Request for Production No. 118); and documents sufficient to show the identity of all persons at defendant involved in determining what software is included in the IPP (Request for Production No. 135)</u>. IPP is a program in which defendant contracts with middleware providers to add functionality to UE. Plaintiff argued in the memorandum supporting

9

its motion that the materials requested are relevant to defendant's knowledge of the capabilities of UE3 when it made representations regarding such capabilities to plaintiff. At the hearing, plaintiff clarified that by this discovery it seeks the identity of the third parties and what it is they created, stated in English language terms as opposed to code, in order to determine whether defendant is the owner of all aspects of UE3 which it is claiming as its intellectual property. Plaintiff said that it does not seek changes, patches, or fixes made to the source code by the third parties. Defendant argues that the requested disclosures will disrupt its business practices and that production of its Perforce database, which shows the history of the development of UE3 and includes the source code for the current and historical iterations of UE3, will provide plaintiff all of the information it needs to establish what defendant knew about the capabilities of UE3 at any particular time.

The court finds that the material sought by plaintiff as described at the hearing is properly discoverable. This material relates directly to the question of ownership of the intellectual property contained in UE3, a matter that defendant has put into issue by its counterclaims. Moreover, discovery from defendant to date has failed to establish precisely for what intellectual property defendant is claiming as trade secrets. The material sought may also help shed light, albeit less directly, on the capabilities and alleged deficiencies of UE3. The court has considered carefully defendant's concerns about the impact of permitting the instant discovery on its relationships with third parties, but believes that these concerns warrant narrowing the scope of certain of the instant discovery requests rather precluding plaintiff from conducting this discovery at all.

The court accordingly orders defendant to respond to: Interrogatory No. 11 by identifying all third-party software, including middleware, used by defendant as part of or in any capacity with UE3; Interrogatory No. 12 by identifying all persons whose software was used by defendant as part

of or in any capacity with UE3 and who are included in the IPP; Request for Production No. 118 by producing documents sufficient to provide in English language terms, as opposed to code, a full description of the software developed by each third party which was used by defendant as part of or in any capacity with UE3; and Request for Production No. 135 by producing documents sufficient to show the identity of all persons at defendant involved in determining what software relating to UE3 is included in the IPP.

8. All documents reflecting plans or strategies for the design and development of UE3 (Request for Production No. 129). In its response to the instant motion (DE #62, pp. 8-9) and a supporting declaration (DE #62-2 ¶ 9), defendant has indicated that it is producing the documents responsive to this request. The court finds that these documents are clearly discoverable. To ensure timely production, the court directs that defendant respond fully to this request for production.

9. All communications and documents relating to defendant's use of UE3 in the design or development of *Gears of War* and *Unreal Tournament 3* on any platform (Requests for Production 127 and 128), and all communications relating to defendant's release of any game code for *Gears of War* on the UDN and all documents relating to such communications (Request for Production No. 132). Plaintiff contends that the materials requested relate directly to its allegations that defendant wrongfully gave priority to the design and development of *Gears of War* over support of its UE3 licensees and that defendant misrepresented the synergistic model of game development as a benefit to its licensees. Defendant argues that documents regarding its projects other than UE3 are not relevant to the claims or defenses in this lawsuit and that plaintiff has or will have ample information regarding UE3 through discovery and otherwise. In addition, defendant notes that it has already made available through the UDN code regarding *Gears of War*.

11

The court finds that plaintiff has not established at this time that the materials sought are properly discoverable. These materials relate to a matter of the utmost commercial sensitivity–that is, the manner in which a competitor developed competing products. Moreover, the discovery requests seek to probe expansively into this area. The court recognizes that the discovery requests have some relevance to plaintiff's allegations that defendant developed its own games to the detriment of its obligations to plaintiff and other licensees, that defendant's representations regarding the manner in which it developed UE3 were not accurate, and that by such conduct defendant violated obligations it had to plaintiff. Nevertheless, even considering the protections afforded by the Protective Order in this case, the court does not believe that these allegations have been shown at this point to justify the level of intrusion into defendant's commercial activities that plaintiff seeks or that other less intrusive means cannot be used to attempt to establish the factual and legal basis for the allegations. Defendant therefore need not at this time produce the material sought in plaintiff's Requests for Production Nos. 127, 128, and 132.

**Plaintiff's Second Motion to Compel (DE #70)**. In response to defendant's counterclaim that plaintiff infringed on defendant's trade secrets, plaintiff served its Interrogatories Nos. 1 and 2 (DE #78, p. 12 of 111 (interrogatories) and pp. 18-19 of 111 (responses)), which ask defendant to identify every trade secret defendant claims to be contained in or encompassed by the technology licensed by defendant to plaintiff and to state with specificity the location of each such trade secret in the licensed technology. Defendant answered the interrogatories by producing a thirty-seven page document which purported to identify defendant's trade secrets contained in UE3. Plaintiff contends, however, that this list does not enable it to determine what it is accused of misappropriating because the list does not identify the trade secrets and their locations with sufficient

12

precision and contains substantial extraneous information and code. The instant motion by plaintiff seeks a more particularized statement of defendant's trade secrets.

At the hearing, defendant informed the court that the list it had prepared was based on a more current version of UE3 than the one which plaintiff was analyzing, a fact accounting for some of plaintiff's objections, and that defendant had provided plaintiff a new list of its trade secrets designed to address any deficiencies in the prior document. Plaintiff stated at the hearing that this new description also fails to enable it to identify the claimed trade secrets.

Although neither party has submitted the new list of trade secrets to the court, the court finds that the record is sufficiently developed to enable it to rule on the instant motion. Not only does the court have the benefit of the parties' memoranda on the instant motion and the comments of counsel at the hearing, but both parties submitted declarations from computer experts with their respective memoranda. The declarations explain well the technical issues relating to the motion. The declaration by defendant's expert even touches on the changes reflected in the new list of trade secrets.

Case law under the North Carolina version of the Uniform Trade Secrets Act, N.C. Gen. Stat. §§ 66-152, *et seq.*, requires that a party asserting a claim of trade secret misappropriation "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether a misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michaelski,* 157 N.C. App. 462, 468, 579 S.E. 2d 449, 453 (2003). The parties agree that this standard applies to the instant motion. (Plf.'s Mem. (DE #76), pp. 2-3; Def.'s Mem. (DE #92), p. 4). In addition, the description of an alleged trade secret must separate it from "matters of general knowledge in the trade or of special knowledge of those

13

persons skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (7th Cir. 1998) (internal citations omitted).

The court finds that defendant has failed to provide a list of trade secrets that meets the foregoing requirements. Although defendant contends that an experienced computer programmer should be able to identify the claimed trade secrets based on the lists of trade secrets it prepared, plaintiff's expert documented extensively his inability to identify defendant's claimed trade secrets based on the initial list and, as indicated, plaintiff's counsel represented at the hearing that such inability remained with respect to the new list. (*See* Plf.'s Expert Dec. (DE #79) ¶¶ 7-11 & Ex. B, C, D). Plaintiff's expert is clearly an experienced programmer, having thirty-five years in computer programming, which is more experience than defendant's expert, who has nine years of professional computer experience. (*See* Plf.'s Expert Dec. ¶¶ 2-3 & Ex. A; Def.'s Expert Dec. (DE #92-5) ¶ 2). Defendant's expert's declaration does not fully respond to the concerns stated in the plaintiff's expert's declaration, especially with respect to the issue of distinguishing defendant's alleged trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. In addition, defendant's expert himself suggests that defendant's identifications of trade secrets are open to interpretation. (*See* Def.'s Expert Dec. ¶ 7 ("I read Epic's Unreal Engine3 trade secrets list, and the explanatory notes provided therein . . . to mean . . . .").

Although defendant's expert states it would be unreasonably burdensome for defendant to describe every trade secret in any further detail given the number of trade secrets claimed, he provides no information demonstrating that he is competent to gauge what would or would not be unreasonably burdensome for defendant and provides no facts to support the contention. (*See id.* ¶ 4). Plaintiff obviously did not find it too burdensome to specify all its myriad objections to

14

defendant's trade secret descriptions. Moreover, the need for the list arises directly from defendant's own counterclaim for misappropriation of trade secrets.

The court therefore ALLOWS the instant motion and orders defendant to respond to plaintiff's Interrogatories Nos. 1 and 2 by providing a prose description of each feature of UE3 it contends is a trade secret and specifying the lines of code within specified files that embody the trade secret. The description of each trade secret must clearly separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. Defendant is urged to confer with plaintiff regarding the specific deficiencies plaintiff has identified in defendant's most recent list of trade secrets. Defendant shall provide this particularized description of its trade secrets by 14 July 2008.

**Defendant's First Motion to Compel (DE #83).** In this motion, defendant requests an order compelling responses to its Requests for Production Nos. 1, 2, 41, and 42 (DE #83-4). These discovery requests seek production of the computer source code and related tools underlying plaintiff's video game engine and the video game that was developed using that engine. Plaintiff does not contest the discoverability of this material, but argues that defendant must identify the trade secrets allegedly being violated (the subject of plaintiff's second motion to compel) before it does so.

The court agrees with plaintiff and finds that a delay in producing the source code and related tools is justified by defendant's failure to identify the trade secrets at issue with particularity. *See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del 1991). The motion is accordingly ALLOWED. Plaintiff shall serve on defendant the documents sought in

15

defendant's Requests for Production Nos. 1, 2, 41, and 42 within fourteen days after defendant produces to plaintiff the particularized description of trade secrets provided for in this Order.

**Defendant's Second Motion to Compel (DE #99).** By this motion, defendant seeks an order compelling plaintiff to produce the telephone numbers of former employees of plaintiff who had access to and/or used UE3 in designing and developing certain specified works by plaintiff (*i.e.*, "Silicon Knights Works"), pursuant to defendant's Interrogatory No. 1.[2] Defendant contends that the telephone numbers constitute basic identifying information that is plainly discoverable under Rule 26(b)(1) ("Parties may obtain discovery regarding . . . the identity and location of persons who know of any discoverable matter."). Plaintiff does not object to producing the telephone numbers, to the extent that they have them, but requests that the court order defendant to reciprocate by providing telephone numbers for former employees defendant has identified pursuant to plaintiff's Requests for Production Nos. 112-17 (*see* DE #60-6, pp. 36-38), which seek documents sufficient to identify persons who participated in the design and development of UE3 for various platforms (*i.e.*, Xbox360, Playstation3, and the PC) or provided technical support for UE3 on each such platform.

The court finds that the telephone numbers sought by both plaintiff and defendant are discoverable. Although plaintiff has not asserted its request for an order compelling production of the telephone numbers it seeks through a formal motion, as the Federal Rules and Local Rules provide, the court believes that judicial economy would be served by the court's addressing the request at this time and that defendant would not be prejudiced by proceeding in this manner. The

---

[2] The interrogatory and a summary of the objections to it are set out in the instant motion (DE #99, p. 2 ¶¶ 2, 3) and the definition of "Silicon Knights Works" is set out in the supporting memorandum (DE #100, p. 2 n. 1).

16

court accordingly ALLOWS defendant's motion and directs plaintiff to produce the telephone numbers of its former employees whose identity is sought in defendant's Interrogatory No. 1. In its discretion, the court also directs defendant to produce the telephone numbers of its former employees whose identity is sought in plaintiff's Requests for Production Nos. 112-17. The production of the telephone numbers shall be made by 27 June 2008.

At the hearing and in their written submissions, the parties discussed the manner in which counsel may appropriately conduct off-the-record contacts with former employees of the opposing party, as well as third parties. In some cases, the parties find it helpful for the court to adopt a protocol for such contacts. If the parties wish to pursue such a protocol, they shall confer and propose one for the court's consideration.

**Expenses Incurred on Motions to Compel.** Fed. R. Civ. P. 37(a)(5) requires that the court award the expenses incurred on a motion to compel subject to certain exceptions. The court has considered carefully the award of expenses on each of the motions to compel at issue. It finds that the circumstances presented would make the award of expenses unjust and therefore DENIES the award of expenses to either party.

To the extent that the parties engage in further written discovery, the court admonishes the parties to ensure that their discovery requests and objections have the requisite specificity. Many of the discovery requests and objections at issue in the instant motions suffered from a lack of specificity that clearly contributed to disputes and miscommunication. In addition, the parties are reminded that conditioning one's own production on that by the other party is not, absent unusual circumstances, permitted under the law. Lastly, the court urges the parties to continue their laudable

17

efforts to attempt to resolve disputes as they arise. The status conferences provided for in this Order should help keep the lines of communication open.

**Joint Motion to Amend/Correct Scheduling Order (DE #93).** This motion seeks to extend all deadlines in the current Scheduling Order. Having considered the parties' arguments and for good cause shown, the court ALLOWS the motion. *See* Fed. R. Civ. P. 16(b)(4). The schedule for this case is modified as follows:

1. The court shall hold a status conference on 17 July 2008 at 2:00 p.m. in the Fifth Floor Courtroom in the Terry Sanford Federal Building and Courthouse in Raleigh, North Carolina. Thereafter, no later than every thirty days the court will hold a status conference with the parties, which may be in person or by telephone. The court will hold status conferences at such other times as it deems appropriate, either at the request of the parties or *sua sponte*. Three days before any status conference, counsel for the respective parties shall submit to the undersigned (via email to Documents_USMJ_Gates@nced.uscourts.gov) a joint letter or individual letters (the latter of which must be served on opposing counsel) listing all matters the parties anticipate addressing at the status conference and including any request that the conference be conducted by telephone. The court reserves the prerogative not to consider matters not included in counsel's submissions, absent a showing of good cause, in order to prevent unfair surprise to a party and to help ensure adequate preparation for the conference. If the parties do not believe a particular conference is necessary and should be cancelled, they shall notify the undersigned three days before the scheduled date for the conference.

2. Reports from retained experts shall be due by 16 February 2009 and from rebuttal experts by 16 March 2009.

18

3.  All fact discovery shall be completed by 14 January 2009. All expert discovery shall be completed by 16 April 2009.

4.  The parties shall supplement their initial disclosures under Fed. R. Civ. P. 26(a)(1) by 14 July 2008. Thereafter, each party shall supplement its disclosures and discovery responses promptly after receipt by the party or its counsel of the information requiring supplementation, but in no event later than 16 April 2009.

5.  All potentially dispositive motions shall be filed by 18 May 2009.

6.  A mediation shall be held in this case pursuant to Local Rule 101.3, E.D.N.C. No later than 28 July 2008, the parties shall confer regarding selection of a mediator and, if they are able to reach agreement, file a notice naming the proposed mediator, stating his rate of compensation, and confirming his agreement to serve in this case if appointed. If the parties are unable to reach agreement on selection of a mediator, each party shall file by the same date a separate notice proposing at least one but no more than three mediators from the court's panel of mediators and confirming that each mediator proposed has agreed to serve in this case if appointed. The court will appoint the mediator after consideration of the parties' submissions. The order appointing the mediator shall require him to confer with counsel within a specified period after his appointment, and to conduct such additional mediation sessions as he deems appropriate. The mediation proceedings shall be completed no later than 16 April 2009.

7.  In any matters before the undersigned, counsel shall submit to the undersigned's chambers two copies in notebooks of any documents filed by such counsel which exceed twenty pages in length together with any associated filings by such counsel irrespective of length. The submission to chambers shall be within one day after the date of filing.

8. All provisions of the Scheduling Order (DE #33) not expressly modified herein shall remain in effect.

## Conclusion

For the foregoing reasons, plaintiff's first motion to compel (DE #59) is ALLOWED IN PART and DENIED IN PART; plaintiff's second motion to compel (DE #70) is ALLOWED; defendant's first motion to compel (DE #83) is ALLOWED; defendant's second motion to compel (DE #99) is ALLOWED; and the parties' joint motion to amend the Scheduling Order (DE #93) is ALLOWED.

SO ORDERED, this 13th day of June, 2008.

James E. Gates
United States Magistrate Judge