IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:07-CV-275-D

| | | |
|---|---|---|
| SILICON KNIGHTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| EPIC GAMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on the pending motion (DE #229) by defendant and counterclaim plaintiff Epic Games, Inc. ("Epic") to compel responses to requests for production it served on plaintiff and counterclaim defendant Silicon Knights, Inc. ("SK"). The court heard argument on the motion to compel at a recent status conference.[1] For the reasons set forth below, the court will allow in part and deny in part the motion.

## BACKGROUND

SK and Epic are both engaged in the business of developing video games. In July 2007, SK commenced this lawsuit against Epic alleging fraud, breach of contract, and other torts in connection with a license that SK purchased from Epic for its game engine, Unreal Engine 3 ("UE3"). (*See generally* Compl. ¶¶ 1, 5, 14). Specifically, SK claims that Epic failed to provide SK with properly working software or offer any reasonable support to SK as a licensee. (*Id.* ¶ 14). SK further alleges that Epic wrongfully used the licensing fees it obtained from SK and other licensees to fund the launch of another game which competes with UE3 and has enjoyed substantial commercial success at the expense of UE3. (*See id.* ¶ 16). Epic, in turn, contends that SK used Epic's licensed

---

[1] The court has addressed by separate order a motion by SK for a protective order (DE #223) which was also discussed at the status conference.

technology in violation of Epic's rights. (*See* Countercl., p. 1). Epic has asserted counterclaims for copyright infringement, breach of the license agreement, and misappropriation of trade secrets, and for the imposition of a constructive trust. (*Id.*).

## DISCUSSION

### A.    Standards for Discovery

Rule 26 allows parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b). Relevant information need not be admissible at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence. *See id.*; *Hinton v. Conner*, 225 F.R.D. 513, 515 (M.D.N.C. 2005) (Rule 26 provides that "a party may obtain discovery of any non-privileged matter relevant to a claim or defense, but that such information need not be admissible at trial so long as it appears to be 'reasonably calculated to lead to the discovery of admissible evidence.'") (quoting Fed. R. Civ. P. 26(b)(1)). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Rodger v. Elec. Data Sys., Corp.*, 155 F.R.D. 537, 539 (E.D.N.C. 1994) (citations omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless, and the court has the discretion to set appropriate limits on the discovery permitted. *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005).

2

B. **Individual Production Requests**

By its motion, Epic seeks an order compelling complete responses by SK to Epic's Requests for Production Nos. 7, 8, 50, 72, 30, 175, and 195.[2] Each production request will be addressed below.

**Request No. 7.** This request seeks calendars, planners, and schedules for seven SK employees: Dennis Dyack, James O'Reilly, Paul Caporicci, Peter Handrinos, Dave Riganelli, Rich Barnes, and Seth Thompson. SK has agreed to produce the requested documents it possesses for the seven identified individuals. Accordingly, as stated at the status conference, the court orders that, to the extent not already produced, SK produce to Epic the foregoing documents no later than 23 January 2009.

**Request No. 8.** Request No. 8 initially sought agendas, telephone logs, message slips, notes, and memoranda relating to meetings or communications with Epic, Epic's licensees, Microsoft, Sega, or other publishers relating to UE3, Too Human, the Second Game, or the SK Engine. The motion to compel seeks a narrow category of these documents, specifically, all notes taken concerning an August 2004 visit from Epic CEO Tim Sweeney. SK has agreed to produce all notes it possesses from this visit. The court accordingly ordered at the status conference that, to the extent not already produced, SK produce to Epic on or before 15 December 2008 all notes taken concerning an August 2004 visit from Epic CEO Tim Sweeney.

**Request No. 50.** This request initially sought all documents concerning any formal or informal performance evaluations of the SK employees identified in paragraph 16 of the complaint. Epic later agreed to narrow the request to include only negative employee performance evaluations

---

[2] In compliance with Local Civil Rule 7.1(c), E.D.N.C., the requests are set out in Epic's motion.

3

related to work associated with Too Human, the Second Game, or the SK Engine. SK has advised the court that all responsive documents have been produced. The court accordingly finds that no action by it with respect to this request is warranted at this time.

**Request No. 72.** Request No. 72 requests documents sufficient to show the terms of SK's partnership with Nintendo. At the status conference, SK agreed to produce to Epic any agreements it had with Nintendo, other than those already produced by Nintendo or SK, and Epic agreed to accept such production in satisfaction of this request. The court accordingly ordered at the status conference that SK produce to Epic by 5 January 2009 any agreements it had with Nintendo, other than those already produced by Nintendo or SK.

**Request Nos. 30 and 195.** The issue presented for court resolution by Requests Nos. 30 and 195 is the extent to which these requests require production by SK of documents relating to the transfer of publishing rights in the Second Game from Sega to THC, Inc. other than the final versions of the agreements providing for such transfer. SK has agreed to produce the final versions of such agreements. The court orders that SK make such production no later than 13 January 2009, if it has not already done so.

As to the other documents relating to the transfer, Epic contends that the requests, taken together, do encompass them, including drafts of any agreements between the parties, and that such other documents are relevant. SK argues that the requests as written do not include such other documents and, even if they did, many of the documents sought are irrelevant and would be protected from production by the common interest or joint defense privilege.

The court finds that the drafts of the transfer agreements are encompassed by Epic's requests, because Epic has defined "document" in the set of requests for production at issue to include the

4

original draft and any nonidentical variation thereof.[3] The court believes, however, that further development of the record is required for the court to rule on the other issues presented by these requests.

In particular, the court needs a privilege log regarding the documents SK is withholding in response to these requests in order to evaluate its claim of privilege. The Federal Rules of Civil Procedure require that a privilege log be created for each document withheld on the basis of privilege. Fed. R. Civ. P. 26(b)(5). Although the parties have apparently agreed to delayed production of their privilege logs generally, in this instance more prompt production is required. SK shall therefore produce by 27 January 2009 a privilege log for any documents it is withholding in response to Requests Nos. 30 and 195. The privilege log may help clarify issues of relevance. If, after receipt of the privilege log, Epic still believes it is entitled to production of the documents subject to these requests that SK is withholding, it may refile its motion to compel.

**Request No. 175.** Epic states that, as narrowed through discussions between the parties, Request No. 175 now seeks only complaints SK received directly from third parties, including game publishers, regarding the manner in which SK develops games, any delays in completing those games, and the performance of those games. (Epic's Mem. (DE #238-4) at 4). SK has agreed to produce all such material relating to Too Human or the Second Game, but argues that the request is overbroad in seeking complaints regarding other games. SK reasons that the only SK games at issue in this case are those based on UE3—namely, Too Human and the Second Game—and that Request No. 175 impermissibly encompasses games not based on UE3. Epic contends that Request

---

[3] At the court's request at the status conference, Epic submitted to the undersigned's chambers the definitions (and other portions of the set of production requests at issue). The definitions are being filed contemporaneously with this order to ensure a complete record.

No. 175 relates to its defense that problems other than deficiencies in UE3 caused the purported difficulties SK had with it. (Ans. (DE #50) p. 47, Resp. to ¶92 ("Any harm suffered by Silicon Knights is the result of its own intentional or negligent acts, and has not been caused by any act or omission of Epic."), Defenses, p. 67 ¶4 ("Silicon Knights' negligence claim is barred by . . . contributory negligence.")). More specifically, Epic argues that various deficiencies in SK's operations account for the difficulties SK purportedly had with UE3 and that Epic may permissibly inquire into complaints about those deficiencies over a relevant time period.

The court believes that the complaints sought by the request, as narrowed and if limited to an appropriate time period, are discoverable. The request seeks complaints regarding general alleged deficiencies in SK's operations that Epic contends contributed to SK's purported problems with UE3. Such complaints could reasonably be expected to shed light on salient aspects of these alleged deficiencies, if any, including their severity and longevity, particularly if continuity of operations over the relevant time period is assumed. No evidence contradicting such an assumption was offered. The request accordingly seeks materials that bear a reasonable relationship to Epic's causation defense. The fact that some complaints may address games other than those based on UE3 does not negate this nexus to the causation defense.

Contrary to SK's contention, the court believes that enforcement of the instant request on the terms specified herein is consistent with the court's 13 June 2008 order (DE #106). In that order, the court permitted discovery regarding complaints by nonparties about the same problems SK alleges it had with UE3. Here, the court is permitting discovery regarding complaints by nonparties about the same alleged problems in SK's operations Epic contends affected SK's use of UE3.

6

It is therefore ORDERED that SK respond to Request No. 175 by producing to Epic, to the extent that it has not already done so, any complaint received directly from third parties, including game publishers, between 10 May 2003 and the present regarding the manner in which SK develops games, any delays in completing those games, and the performance of those games. The date of 10 May 2003 is two years prior to the date of the License Agreement between SK and Epic. The court believes this period is sufficiently long to provide meaningful insight into the alleged problems with SK's operations prior to development of Too Human while avoiding unnecessary intrusion into SK's business and affairs. SK shall make this production no later than 27 January 2009.

## CONCLUSION

For the foregoing reasons, Epic's motion to compel (DE #229) is ALLOWED in PART and DENIED in PART on the terms set out above.

The court finds that the circumstances presented would make the award of expenses on the motion unjust. Each party shall therefore bear its own expenses. *See* Fed. R. Civ. P. 37(a)(5)(C).

SO ORDERED, this 6th day of January, 2009.

James E. Gates
United States Magistrate Judge