IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-275-D

| | |
|---|---|
| SILICON KNIGHTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| EPIC GAMES, INC., ) | |
| ) | |
| Defendant. ) | |

On July 8, 2011, Epic Games, Inc. ("Epic" or "defendant") filed motions to exclude the reports and testimony of two of Silicon Knights, Inc.'s experts, Robert Young [D.E. 613] and Robert Zdybel [D.E. 626]. On July 15, 2011, Silicon Knights, Inc. ("SK" or "plaintiff") responded in opposition [D.E. 638, 645] and filed motions to seal the responses [D.E. 640, 653]. On July 22, 2011, Epic replied [D.E. 657, 658]. As explained below, the court denies Epic's motions. As for SK's motions to seal their responses, the court grants the motions to seal in part and denies the motions to seal in part.

I.

SK and Epic are both engaged in the business of developing video games. On May 10, 2005, SK entered into a license agreement to use Epic's video game engine, the Unreal Engine 3 ("UE3"), in SK's development of Too Human, a game SK produced under a publishing agreement with Microsoft. SK contends that problems with UE3 eventually forced SK to develop their own game engine ("SKE"), which delayed the release of Too Human by nearly two years. In 2007, SK filed suit against Epic. SK alleges that, during the parties' negotiations, Epic made false representations concerning the license agreement and the functionality of UE3. SK asserts multiple claims against Epic, including breach of contract, fraud, and other torts. In response, Epic filed counterclaims

asserting breach of contract, copyright infringement, misappropriation of trade secrets, and seeking imposition of a constructive trust. Epic alleges that SK misappropriated Epic's trade secrets and infringed its copyright when SK used UE3 programming code to develop the SKE game engine.

Robert Young ("Young") is a computer forensics expert with over thirty years of experience in the computer industry. See Robert Young Expert Report [D.E. 535, Ex. 50] 13–15 (hereinafter "Young Report"). SK retained Young to provide expert analysis and testimony regarding Epic's alleged trade secrets and to conduct a comparison between SK and Epic's source code. Id. at 1–2.

Essentially, Epic argues that Young's opinions and reports should be excluded for four reasons. First, Epic argues that Young did not analyze the correct versions of SK's programming code, and therefore his opinion regarding whether SK misappropriated Epic's computer code is not reliable. Def.'s Mem. Supp. Mot. Exclude Young 5–7. Second, Epic argues that Young does not have a reliable basis for his opinion because Young did not analyze all of SK's programming code. Id. at 7–10. Third, Epic claims that Young's criticism of the analysis performed by Epic's experts should be excluded because Young did not analyze the data that Epic's experts reviewed and his criticism is based on a legal argument. Id. at 10–11. Finally, Epic argues that Young cannot discuss Epic's list of alleged trade secrets because Young analyzed earlier versions of Epic's alleged trade secret list that were subsequently revised. Id. at 11–16.

Robert Zdybel ("Zdybel") is a computer programming engineer with thirty years of experience in the video-game industry. See Expert Report of Robert Zdybel [D.E. 627, Ex. A] 1–2, 4 (hereinafter "Zdybel Report"). SK retained Zdybel to provide expert analysis and testimony regarding Epic's copyright and trade secret counterclaims. Id. at 4.

Epic argues that Zdybel's opening report and opinions should be excluded. First, Epic argues that Zdybel does not have a reliable basis for his opinion on UE3's functionality because he did not examine the source code for UE3. Def.'s Mem. Supp. Mot. Exclude Zdybel 5–10. Second, Epic argues that Zdybel's opinion misconstrues the license agreement warranty. Id. at 10–12. Third, Epic

argues that the documents Zdybel reviewed do not provide a reliable basis for his opinions. Id. at 12–14. Finally, Epic claims that many of Zdybel's conclusions are not supported by the evidence or are argumentative. Id. at 14–19.

SK responds that both Young and Zdybel's opinions are admissible under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). SK disputes many of Epic's characterizations and notes that Epic's objections simply go to the weight that should be given to each expert's opinions.

II.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of evidence. See, e.g., Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court has broad discretion in admitting or excluding proposed expert testimony. See, e.g., United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994). Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); see Daubert, 509 U.S. at 589; United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. See, e.g., Kumho Tire, 526 U.S. at 147.

To be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. See Daubert, 509 U.S. at 591–92. "Testimony from an expert is presumed to be helpful

3

unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993); Koger v. Norfolk S. Ry. Co., No. 1:08-0909, 2010 WL 692842, at *1 (S.D. W. Va. Feb. 23, 2010) (unpublished).

"[T]he test of reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (quotation omitted) (emphasis removed); see Kumho Tire, 526 U.S. at 141–42. A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. Kumho Tire, 526 U.S. at 147. When an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf, 993 F.2d at 377 (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)); The Harvester, Inc. v. Rule Joy Trammell & Rubio, LLC, No. 3:09cv358, 2010 WL 2653373, at *1 (E.D. Va. July 2, 2010) (unpublished).

Daubert's gatekeeping requirement ensures "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. However, the court need not determine that the proffered expert testimony is irrefutable or certainly correct. After all, like all forms of testimony, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596; Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

The court has reviewed the briefs, depositions, and expert reports in light of the governing standard. The proposed expert testimony of Young and Zdybel pass muster under Rule 702 and Daubert. At bottom, Epic's arguments go to the weight, not the admissibility of Young and Zdybel's opinions. Accordingly, Epic's motions are denied.

4

III.

In sum, the court DENIES Epic's motions to exclude the testimony of Robert Young and Robert Zdybel [D.E. 613, 626]. The court DENIES in part and GRANTS in part SK's motion to seal the response in opposition [D.E. 640]. Sections I, III.A, III.C, III.D, III.E, and III.F of SK's response [D.E. 638] and the supporting documents are properly sealed. The balance of the memorandum is not. The court DENIES in part and GRANTS in part SK's motion to seal the response in opposition [D.E. 653]. Sections III.A, III.D, and III.E of SK's response [D.E. 645] and the supporting documents are properly sealed. The balance of the memorandum is not.

SO ORDERED. This 28 day of October 2011.

JAMES C. DEVER III
Chief United States District Judge