IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-275-D

| | |
|---|---|
| SILICON KNIGHTS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EPIC GAMES, INC., )<br>)<br>Defendant. ) | **ORDER** |

On July 8, 2011, Epic Games, Inc. ("Epic" or "defendant") filed a motion in limine regarding various matters [D.E. 616] and a motion in limine to exclude alleged misrepresentations and omissions [D.E. 624]. On July 15, 2011, Silicon Knights, Inc. ("SK" or "plaintiff") filed responses in opposition [D.E. 631, 632] and a motion to seal one of SK's briefs and the supporting exhibits [D.E. 642]. On July 22, 2011, Epic replied [D.E. 660, 661]. As explained below, the court grants in part and denies in part Epic's motion in limine regarding various matters and denies Epic's motion in limine to exclude alleged misrepresentations and omissions. As for SK's motion to seal its response, the court grants the motion to seal in part and denies the motion to seal in part.

I.

SK and Epic are both engaged in the business of developing video games. On May 10, 2005, SK entered into a license agreement to use Epic's video game engine, the Unreal Engine 3 ("UE3"), in SK's development of Too Human, a game SK produced under a publishing agreement with Microsoft. SK contends that problems with UE3 eventually forced SK to develop their own game engine ("SKE"), which delayed the release of Too Human by nearly two years. In 2007, SK filed suit against Epic. SK alleges that, during the parties' negotiations, Epic made false representations concerning the license agreement and the functionality of UE3. SK asserts multiple claims against Epic, including breach of contract, fraud, and other torts. In response, Epic filed counterclaims

asserting breach of contract, copyright infringement, and misappropriation of trade secrets, and seeking imposition of a constructive trust. Epic alleges that SK misappropriated Epic's trade secrets and infringed its copyright when SK used UE3 programming code to develop the SKE game engine.

II.

A motion in limine to exclude evidence should be granted only when the evidence is clearly inadmissible on all potential grounds. E.g., Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218–19 (D. Kan. 2007); Hawthorne Partners v. AT&T Techs., Inc., 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993); see generally 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5037.10 (2d ed. 1982). This principle applies because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins, 487 F. Supp. 2d at 1218; see Hawthorne, 831 F. Supp. at 1400–01; Luce v. United States, 469 U.S. 38, 41 (1984) (noting that courts are "handicapped in any effort to rule on subtle evidentiary questions outside a factual context").

Epic's motion in limine regarding various matters seeks to exclude the introduction of evidence concerning ten different topics. The court addresses each in turn.

A.

First, Epic seeks to exclude evidence and argument concerning SK's dismissed claims and the damages SK sought under those claims. Def.'s Mem. Supp. Mot. [D.E. 617] 2–8. SK argues that the evidence regarding SK's damages remains relevant and admissible to their remaining claims. Pl.'s Mem. Opp'n [D.E. 632] 4–11.

Of course, the parties cannot discuss SK's dismissed claims or introduce evidence on the dismissed claims. The crux of the briefing between Epic and SK relates to the exclusion of evidence concerning (1) Epic's profits, and, (2) SK's lost profits on video games other than Too Human. The court will address damages in connection with its ruling on the Daubert motion concerning Terry Lloyd's testimony. As part of that Daubert analysis, the court will determine what is relevant as to

2

damages on the remaining claims. The analysis will include addressing the admissibility of (1) Epic's profits, and, (2) SK's hypothetical profits on The Ritualyst, Too Human II, Too Human III, and unnamed projects with software publishers Vivendi, THQ, Capcom, and NAMCO.

B.

Second, Epic seeks to exclude evidence and argument concerning the alleged harm that other UE3 licensees suffered. Def.'s Mem. Supp. Mot. 8. Epic argues that such evidence is inadmissible hearsay, is prejudicial, and is not relevant because SK cannot recover damages for harm Epic allegedly caused to other UE3 licensees. Id.; Def.'s Reply [D.E. 660] 3–4. SK responds that the evidence is relevant to SK's claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices, as well as to SK's affirmative defenses, because it is probative of Epic's notice and state of mind regarding problems with UE3. Pl.'s Mem. Opp'n 11–13.

A plaintiff may offer evidence of prior acts or events to prove a defendant's notice or state of mind. See, e.g., Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1385–86 (4th Cir. 1995); FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 576 n.11 (7th Cir. 1989). When evidence is offered for the limited purpose of proving notice, it is not hearsay. See Fed. R. Evid. 801(c); Benedi, 66 F.3d at 1385–86. Of course, the evidence is still subject to Federal Rule of Evidence 403, which permits a court to exclude evidence if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; see also Benedi, 66 F.3d at 1386.

Evidence of alleged harm to other UE3 licensees is probative of Epic's notice and state of mind at the time Epic and SK entered into the license agreement. Thus, evidence that Epic was aware of harm to other UE3 licensees when the parties entered the license agreement is relevant to SK's claims for negligent misrepresentation, fraud, unfair and deceptive trade practices, and common-law unfair competition. See, e.g., Phelps-Dickson Builders, L.L.C. v. Amerimann Partners,

3

172 N.C. App. 427, 437, 617 S.E.2d 664, 670–71 (2005). The court therefore denies Epic's motion to exclude evidence of alleged harm that other UE3 licensees suffered before May 10, 2005. The court will instruct the jury that it may consider the alleged harm to other UE3 licensees only as proof of notice and state of mind.

As for alleged harm that other UE3 licensees suffered after May 10, 2005, the evidence is confusing, potentially misleading, and a waste of time. See Fed. R. Evid. 403. These considerations substantially outweigh any probative value of the evidence. Therefore, Epic's motion to exclude evidence and argument concerning alleged harm to other UE3 licensees is granted in part and denied in part.

C.

Third, Epic seeks to exclude evidence and argument concerning hearsay complaints that other UE3 licensees made and specifically identifies an undated memorandum [D.E. 562-10] and a letter from Buena Vista Games [D.E. 559-12]. Def.'s Mem. Supp. Mot. 9–10. Epic also notes that complaints from other UE3 licensees are prejudicial and would result in mini-trials over collateral issues. Id. at 9. SK responds that the complaints that other UE3 licensees made are not hearsay because they are not offered for the truth of the matter. Pl.'s Mem. Opp'n 13–14. Instead, SK offers the complaints to show Epic's notice and state of mind. Id. at 14. Alternatively, SK argues that the licensee complaints meet several hearsay exceptions. Id. at 14–16.

As noted, a plaintiff may offer evidence of prior acts or events to prove a defendant's notice or state of mind. See, e.g., Benedi, 66 F.3d at 1385–86; Amy Travel, 875 F.2d at 576 n.11. When evidence is offered for the limited purpose of proving notice or state of mind, it is not hearsay. See Fed. R. Evid. 801(c); Benedi, 66 F.3d at 1385–86. Thus, SK may offer evidence of complaints that other UE3 licensees made before May 10, 2005, for the limited purpose of showing Epic's notice and state of mind. The court will instruct the jury that it may consider the complaints only as proof of notice and state of mind and not as evidence that the information contained in the complaints is

4

true.[1] As for any UE3 licensee complaints made after May 10, 2005, the court excludes the complaints under Federal Rule of Evidence 403 as confusing, potentially misleading, and a waste of time. Accordingly, the June 7, 2006 letter from Buena Vista Games [D.E. 559-12] is excluded. The court grants Epic's motion in part and denies the motion in part.

D.

Fourth, Epic seeks to exclude evidence and argument concerning any alleged misrepresentations or omissions that SK did not identify in SK's answer to interrogatory 13. Def.'s Mem. Supp. Mot. 10. Epic also seeks to prevent SK from calling any witnesses not listed in SK's answer to interrogatory 13 regarding the alleged misrepresentations and omissions. Id. SK responds that Epic's motion should be denied because the interrogatory did not ask SK to identify alleged omissions Epic made to SK and did not ask SK to identify alleged misrepresentations or omissions Epic made to third parties. Pl.'s Mem. Opp'n 16–18.

The court has examined interrogatory 13, SK's answer, and the transcript of the parties' October 15, 2009 status conference with Magistrate Judge Gates [D.E. 406]. SK's answer to interrogatory 13 includes all alleged misrepresentations and omissions that Epic made to SK. See

---

[1] As for SK's alternative argument to admit licensee complaints for the truth of the matter asserted, the two documents [D.E. 559-12, 562-10] do not fit within any exceptions cited by SK. First, habit evidence under Federal Rule of Evidence 406 is not an exception to the hearsay rule. See Brooks v. Haggett, No. C 07-2615 MEJ, 2010 WL 4226693, at *2–3 (N.D. Cal. Oct. 21, 2010). In any event, SK does not explain why such habit evidence would be admissible. Second, the documents are not contemporaneous observations. See Fed. R. Evid. 803(1). Third, the documents are not excited utterances, but are a product of reflection. See Fed. R. Evid. 803(2); United States v. Jennings, 496 F.3d 344, 349–50 (4th Cir. 2007). Fourth, the documents do not qualify as records of Epic's regularly conducted business. See Fed. R. Evid. 803(6); Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 194–95 (4th Cir. 2003). Fifth, SK may not rely on the residual hearsay exception because SK has not provided notice or shown that it was unable to obtain admissible evidence. See Fed. R. Evid. 807. Finally, SK cannot bootstrap the licensee complaints into evidence pursuant to the rule of completeness. See Fed. R. Evid. 106. As the party planning to offer Epic's responses into evidence, SK does not qualify as an "adverse party" under the rule. Id. Moreover, Rule 106 is not an exception to the hearsay rule. See United States v. Woolbright, 831 F.2d 1390, 1395 (8th Cir. 1987).

5

Hr'g Tr. 26–31 (Oct. 15, 2009, Status Conference). Thus, as for alleged misrepresentations and omissions that Epic made to SK, SK is limited to those identified in the answer to interrogatory 13. See id. at 30–31. However, interrogatory 13 does not address alleged misrepresentations or omissions that Epic made to third parties. Thus, interrogatory 13 does not limit SK's ability to introduce evidence or argument concerning Epic's alleged misrepresentations or omissions made to third parties. As for SK's witnesses, SK specifically reserved the right to supplement its witness list for trial. See id. at 31–32. Therefore, SK's answer to interrogatory 13 does not limit who may be a witness.[2] Epic's motion is granted in part and denied in part.

E.

Fifth, Epic seeks to exclude evidence and argument concerning SK's alleged problems with UE3 that SK did not identify in compliance with Judge Gates's June 13, 2008, order. Def.'s Mem. Supp. Mot. 11. SK responds that the list of alleged problems with UE3 was compiled to assist Epic with document production, that the list never purported to be SK's list of all evidence and arguments regarding problems with UE3, and that Epic prepared the initial list. Pl.'s Mem. Opp'n 18–20.

The court has reviewed the documents cited by both parties, Judge Gates's June 13, 2008 order [D.E. 106], and the transcript of the July 17, 2008 status conference [D.E. 141]. The June 13, 2008 order and the list of alleged UE3 problems concern Epic's document production and discovery obligations. Epic's motion is denied.

F.

Sixth, Epic seeks to exclude evidence and argument concerning Epic's future revenue and value projections, as well as bonuses paid to Epic's officers. Def.'s Mem. Supp. Mot. 12–13. Epic contends that this financial information is not relevant and is unfairly prejudicial. Id. SK responds that the financial information is relevant to Epic's motive, the bias and credibility of Epic's officers

---

[2] Of course, SK subsequently submitted a witness list, which does limit who SK may call as witnesses. See Proposed Joint Pretrial Order [D.E. 674] 707–17.

who may testify as witnesses at trial, and the amount of SK's compensatory and punitive damages awards. Pl.'s Mem. Opp'n 21.

To the extent this motion implicates the testimony of Terry Lloyd or the proper calculation of SK's damages, the court will address those issues in connection with the Daubert motion concerning Lloyd. As for Epic's projected revenue and value as evidence of Epic's motive, such evidence is barely relevant. Likewise, bonus payments to Epic's officers are barely relevant as evidence of motive, bias, or credibility. Even assuming that this financial information is relevant, the evidence is confusing, a waste of time, and unfairly prejudicial to Epic. See Fed. R. Evid. 403. Therefore, to the extent SK seeks to offer the evidence to prove motive, bias, or attack a witness's credibility, the evidence is excluded under Rule 403.

The court also rejects SK's claim that Epic's bonus payments, projected revenue, or projected value are relevant to punitive damages. The purpose of punitive damages is "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. Under North Carolina law, a plaintiff may recover punitive damages only if the defendant is liable for compensatory damages and the plaintiff proves an aggravating factor (such as fraud) by clear and convincing evidence. Id., § 1D-15; Schenk v. HNA Holdings, Inc., 170 N.C. App. 555, 559, 613 S.E.2d 503, 507 (2005). To award punitive damages against a corporation, "the officers, directors, or managers of the corporation [must have] participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). If the jury reaches the issue of punitive damages, the jury

(1) [s]hall consider the purposes of punitive damages set forth in [N.C. Gen. Stat §] 1D-1; and
(2) [m]ay consider **only** that evidence that relates to the following:
    a. The reprehensibility of the defendant's motives and conduct.
    b. The likelihood, at the relevant time, of serious harm.
    c. The degree of the defendant's awareness of the probable consequences of its conduct.
    d. The duration of the defendant's conduct.
    e. The actual damages suffered by the [plaintiff].

7

> f. Any concealment by the defendant of the facts or consequences of its conduct.
> g. The existence and frequency of any similar past conduct by the defendant.
> h. Whether the defendant profited from the conduct.
> i. The defendant's ability to pay punitive damages, **as evidenced by its revenues or net worth.**

N.C. Gen. Stat. § 1D-35 (emphasis added). Thus, the statute permits evidence of a defendant's actual revenues or net worth. The statute does not, however, permit evidence of a defendant's projected revenues, projected values, or projected net worth. Likewise, the statute does not permit evidence of a defendant's bonus payments to employees. Therefore, the court grants Epic's motion.

G.

Seventh, Epic seeks to exclude evidence and argument concerning the operability of UE3 on the PlayStation 3 console. Def.'s Mem. Supp. Mot. 14–15. Epic argues that "SK cannot maintain any actionable claim associated with the alleged breach of warranty regarding PlayStation 3 when it did not pay a license fee to use UE3 for that purpose." Id. 14. SK responds that Epic's motion in limine is actually a belated motion for partial summary judgment, misconstrues the license agreement, and ignores factual disputes regarding Epic's alleged breach of contract. Pl.'s Mem. Opp'n 21–24.

Epic's motion is an untimely motion for summary judgment on SK's breach of warranty claim. Thus, it is denied as procedurally improper. Additionally, in light of the record, the factual issues in dispute, and the governing law, Epic's motion lacks substantive merit and is denied.

H.

Eighth, Epic seeks to exclude evidence and argument concerning the court's summary judgment rulings on SK's remaining claims. Def.'s Mem. Supp. Mot. 15. SK responds that it never intended to offer evidence or argument concerning the court's summary judgment rulings. Pl.'s Mem. Opp'n 25. SK notes that Epic's motion "is simply appropriate trial practice" and requests the court, to the extent necessary, to bar both parties from referencing the court's prior rulings. Id.

Both parties are precluded from making arguments concerning the court's rulings on each party's motion for summary judgment. Thus, neither party shall mention that the court dismissed some claims and permitted others to proceed to trial.

I.

Ninth, Epic seeks to exclude the introduction of evidence and argument concerning the court's orders compelling discovery and the sufficiency of each party's discovery responses. Def.'s Mem. Supp. Mot. 15–16; see Def.'s Reply 8. SK agrees that excluding all prior court rulings is appropriate, but maintains that Epic's answers to discovery questions are admissible. Pl.'s Mem. Opp'n 25–27.

Both parties are precluded from referencing any order setting forth the court's discovery rulings or the sufficiency of a discovery response. Nonetheless, this ruling does not preclude SK from asking Epic's witnesses about Epic's initial identification of 1,427 alleged trade secrets in UE3 in response to an interrogatory, or Epic's subsequent decision to rely on 333 alleged trade secrets in Epic's trade secret counterclaim. The 1,427 alleged trade secrets identified in the interrogatory constitute an admission by Epic, as do the 333 alleged trade secrets later identified. See Fed. R. Evid. 801(d)(2). The decision not to rely on approximately 1,100 alleged trade secrets identified in the interrogatory is likewise an admission by Epic. Id. In sum, the answers to discovery questions by either party are admissions and are admissible. Epic's motion is granted in part and denied in part.

J.

Tenth, Epic seeks to prevent Christopher Holland, SK's lead trial attorney in this case, from testifying as a rebuttal witness at trial, pursuant to the North Carolina Revised Rules of Professional Conduct. Def.'s Mem. Supp. Mot. 16–18. SK responds that Holland should not be disqualified, that disqualification would be a substantial hardship, and that Epic "created the issue thorough [sic] its own delay." Pl.'s Mem. Opp'n 27–30. Epic replies that SK has been aware of this potential conflict

9

for over three years; therefore, SK cannot now claim prejudice and Holland must choose a role. Def.'s Reply 8–10.

A trial court has discretion to exclude an attorney's testimony when such testimony would violate the rules of professional conduct. See State v. Elam, 56 N.C. App. 590, 593–94, 289 S.E.2d 857, 860 (1982); Town of Mebane v. Iowa Mut. Ins. Co., 28 N.C. App. 27, 31–32, 220 S.E.2d 623, 626 (1975). The North Carolina Revised Rules of Professional Conduct provide that

> (a) [a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

N.C. Rev. R. Prof. Conduct § 3.7(a). The local rules of this court incorporate North Carolina's Revised Rule of Professional Conduct § 3.7(a). See Local Civil Rule 83.1(j), EDNC.

Rule 3.7(a) provides a framework for the general rule that a lawyer acting as an advocate at trial shall not be a witness. Thus, as a general proposition, Holland should not be a witness, whether in SK's case-in-chief or as a rebuttal witness. SK argues that disqualification of Holland would work substantial hardship on SK. However, this is not a case of unfair surprise. See N.C. Rev. R. Prof. Conduct § 3.7(a), cmt. 4 ("It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness."); see also EEOC v. Bardon, Inc., No. RWT 08cv1883, 2010 WL 323067, at *2 (D. Md. Jan. 19, 2010). On May 13, 2008, Epic raised the issue of Holland's possible testimony at a status conference, and SK acknowledged that it was on notice of Holland's potential disqualification. See Hr'g Tr. 66–70 [D.E. 105] (May 13, 2008, Status Conference).[3] Epic subsequently noticed Holland's deposition, and SK sought a protective order in February 2010. See

---

[3] In fact, when Epic raised the issue at the status conference, SK's counsel stated that Epic "is basically advising the court and advising us ... that this issue [of Holland's disqualification] may arise and [that Epic's counsel] doesn't want us to cry wolf somewhere down the road saying oh, it's a surprise to us. We're on notice about it." Hr'g Tr. 70 (May 13, 2008, Status Conference).

10

Def.'s Reply, Ex. 2 (SK's Motion for Protective Order). SK stated that Holland's testimony would be duplicative of information available through SK's corporate deponent and through other SK employees. Id. 1–3. In doing so, SK essentially represented to the court that Holland's testimony was unnecessary. The court has grave concerns about a violation of Rule 3.7(a), the potential for juror confusion, and the prejudice to Epic. Holland therefore must choose whether he will act as an advocate at trial or serve as a rebuttal witness. Holland may not do both. Holland shall notify the court by November 29, 2011, whether he intends to be a witness. If he does intend to be a witness, he will not act as an advocate at trial.

III.

Epic's motion in limine to exclude alleged misrepresentations and omissions seeks to exclude thirty-six misrepresentations and nine omissions alleged by SK. Epic argues that these alleged misrepresentations and omissions are legally insufficient to support a finding of fraud. Def.'s Mem. Supp. Mot. in Limine [D.E. 625] 1. Epic also argues that SK lacks factual support for certain alleged misrepresentations and omissions. Id. 2–9. Accordingly, Epic argues that the thirty-six alleged misrepresentations and nine alleged omissions should be excluded under Federal Rules of Evidence 402 and 403 because they are not relevant to SK's fraud claim and are unfairly prejudicial. See id. 1.

In response, SK cites the court's order denying Epic's motion for summary judgment. See Silicon Knights, Inc. v. Epic Games, Inc., 5:07-CV-275-D [D.E. 592] slip op. at 12–25 (E.D.N.C. Jan. 25, 2011), memorandum and recommendation adopted, [D.E. 605] (E.D.N.C. Mar. 24, 2011). With respect to SK's fraud claim, the court observed that

> [w]hile [some] representations . . . or [the] corresponding omissions do appear to be in the nature of opinions or promises, the court cannot say that they are non-actionable as a matter of law by virtue of their nature. Rather, they present a question for the jury that will depend on the intent behind them . . . .

Id. at 16. SK contends that, even if the misrepresentations and omissions are not independently actionable, they are still admissible as evidence of Epic's ongoing scheme to defraud licensees and

11

are probative of Epic's intent. Pl.'s Mem. Opp'n Mot. in Limine [D.E. 631] 9–13. Additionally, SK argues that the evidence is relevant to other claims, including SK's claims for negligent misrepresentation, unfair and deceptive trade practices, and common-law unfair competition. See id. 19–22.

The court has reviewed the thirty-six alleged misrepresentations and nine alleged omissions. Epic has failed to establish that the evidence is clearly inadmissible on all potential grounds. See Wilkins, 487 F. Supp. 2d at 1218–19; Hawthorne, 831 F. Supp. at 1400–01. Therefore, Epic's motion in limine to exclude the alleged misrepresentations and omissions is denied. See Luce, 469 U.S. at 41; Wilkins, 487 F. Supp. 2d at 1218–19; Hawthorne, 831 F. Supp. at 1400–01.

IV.

In sum, the court GRANTS in part and DENIES in part Epic's motion in limine regarding various matters [D.E. 616]. The court DENIES Epic's motion in limine to exclude alleged misrepresentations and omissions [D.E. 624]. The court GRANTS in part and DENIES in part SK's motion to seal the response in opposition [D.E. 642]. Sections III.A, III.B, III.C, III.D, III.E, III.G, and III.I of SK's response and the supporting documents are properly sealed. The balance of the memorandum is not.

SO ORDERED. This _8_ day of November 2011.

JAMES C. DEVER III
Chief United States District Judge