IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-275-D

| | |
|---|---|
| SILICON KNIGHTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| EPIC GAMES, INC., ) | |
| ) | |
| Defendant. ) | |

On April 27, 2012, Epic Games, Inc. ("Epic" or "defendant") filed a motion to preclude Silicon Knights, Inc. ("SK" or "plaintiff") from offering evidence of, or arguments about, SK's monetary damages at trial [D.E. 721]. Epic also filed a supporting memorandum with attached exhibits [D.E. 722]. On May 1, 2012, SK responded in opposition and attached exhibits [D.E. 744]. On May 2, 2012, the court held the pretrial conference, during which it heard arguments on Epic's motion. As explained below, the court grants the motion in part and precludes SK from offering evidence of, or arguments about, a computation of SK's monetary damages on SK's claims. If SK prevails on any of its claims, it shall receive an award of nominal damages (i.e., $1.00) as to any such claim. This order, however, does not bar SK from offering evidence of, or making arguments about, Epic's alleged damages on its counterclaims.

I.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to disclose to its opposing party "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party cannot fulfill this requirement by providing "undifferentiated financial

statements; it requires a 'computation,' supported by documents." Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006); see Bullard v. Roadway Express, 3 F. App'x 418, 420–21 (6th Cir. 2001) (per curiam) (unpublished); Frontline Med. Assocs., Inc. v. Coventry Health Care, 263 F.R.D. 567, 569 (C.D. Cal. 2009) ("Simply producing financial statements . . . is not sufficient."); Shock v. Aerospace Integration Corp., No. 3:08cv304/RV/EMT, 2009 WL 595923, at *4–5 (N.D. Fla. Mar. 6, 2009). Instead, a party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations. See, e.g., Design Strategy, Inc., 469 F.3d at 295.

Rule 26(e) requires a party to "supplement or correct its [Rule 26(a)] disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A). Moreover, a party may supplement its Rule 26(a)(1)(A)(iii) "computation" by producing an expert report (including documents) that complies with Rule 26(a)(1)(A)(iii). Furthermore, when a party receives additional documents that it intends to use to prove its damages, or when its previous damages computation becomes otherwise inadequate, a party must supplement its Rule 26(a)(1)(A)(iii) computation. See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1229 n.2 (10th Cir. 1999); Hertz v. Luzenac Am., Inc., No. CIVA04CV1961LTBCBS, 2006 WL 994431, at *10 (D. Colo. Apr. 13, 2006) (unpublished).

When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) provides trial courts wide discretion to remedy violations of Rule 26(a) or Rule 26(e). In exercising its "broad discretion," a trial court determines whether a party's failure to comply with Rule 26(a) or Rule 26(e) was "substantially justified or is harmless" by considering

(1) the surprise to the party against whom the evidence would be offered; (2) the

2

ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

A.

In its motion to exclude, Epic argues that

1. In its Rule 26(a) disclosures, SK identified several categories of alleged injury for which it seeks to recover in this action but failed to provide any computation of its alleged damages as required by Rule 26(a)(1)(A)(iii). Instead, SK deferred to "expert analysis and computation."

2. In supplementing its initial disclosures, SK never provided a computation of its alleged damages.

3. SK proffered the report of Terry Lloyd for its expert analysis and computation of damages. SK did not proffer any other expert witness on the issue of damages.

4. On December 22, 2011, this Court excluded Lloyd's report and precluded him from testifying about damages in this action.

5. Pursuant to Rule 37(c)(1), the failure to disclose information required under Rule 26(a) results in that information being precluded from use at trial unless the failure to disclose was substantially justified or harmless. SK's failure to disclose its computation of damages was neither substantially justified nor harmless.

Def.'s Mot. Exclude [D.E. 721] 1–2. In its memorandum, Epic notes that SK served its initial disclosures on October 3, 2007. Def.'s Mem. Supp. Mot. Exclude [D.E. 722] 1. In a section of its initial disclosures entitled "COMPUTATION OF DAMAGES," SK identified several categories of alleged injury and stated,

> As set forth in its Complaint, SK has been severely damaged by Defendant and SK has several bases upon which it may recover compensatory and punitive damages, as well as other relief, from Epic. Those specific damages calculations will be the subject of expert analysis and computation. In good faith, however, SK believes that its damages will total several million dollars due to fraud and other tortuous [sic] conduct, breach of contract and substantial damages from ill-gotten gains from collecting the license fees under false pretenses should be disgorged.

. . .

3

> Documents in support of SK's damages will be produced upon a mutually agreeable date, to the extent such documents have not already been produced. In addition, some of the documents in support of SK's monetary damages are in the possession, custody, and control of third parties, including Defendant. SK anticipates that its continuing investigation of this matter and/or discovery in this action may lead to additional information, witnesses, and/or documentation relevant to SK's damages in this action, and SK expressly reserves its right to supplement this damage computation with such additional information, witnesses, expert analysis, and/or documentation as required by the Federal Rules of Civil Procedure.

Def.'s Mem. Supp. Mot. Exclude, Ex. 1 ("SK's Initial Disclosures") 18–19.

On July 15, 2008, SK served its first supplemental initial disclosures. Def.'s Mem. Supp. Mot. Exclude, Ex. 2 ("SK's First Supplemental Initial Disclosures"). SK provided the identical disclosure as to "COMPUTATION OF DAMAGES." Id. 25.

On March 23, 2009 and December 4, 2009, SK again supplemented its initial disclosures. See Def.'s Mem. Supp. Mot. Exclude, Ex. 3 ("SK's Third Supplemental Initial Disclosures"); Def.'s Mem. Supp. Mot. Exclude, Ex. 4 ("SK's Third [sic] Supplemental Initial Disclosures"). These supplements do not include a section entitled "COMPUTATION OF DAMAGES." See SK's Third Supplemental Initial Disclosures; SK's Third [sic] Supplemental Initial Disclosures.

On December 4, 2009, non-expert discovery closed and on June 4, 2010, expert discovery closed. See Mar. 5, 2010 Order Amending Scheduling Order [D.E. 492] 1; Oct. 2, 2009 Order Amending Scheduling Order [D.E. 400] 2; Scheduling Order [D.E. 33].

Before the close of expert discovery, SK produced the report of its damages expert, Terry Lloyd ("Lloyd") ("Lloyd Report") [D.E. 564-1–3], and Lloyd's report in rebuttal to Epic's claimed damages ("Lloyd Rebuttal Report") [D.E. 621-2]. The Lloyd Report contains a "computation of each category of damages" claimed by SK and a discussion of the documents or other evidentiary material on which the computation was based. See Lloyd Report [D.E. 564-1] 41; cf. Fed. R. Civ. P. 26(a)(1)(A)(iii). The Lloyd Report constitutes a supplement under Rule 26(e) and satisfied SK's obligation under Rule 26(a)(1)(A)(iii). See Fed. R. Civ. P. 26(e). On May 26, 2010, Epic deposed Lloyd. See [D.E. 564-4].

4

On July 8, 2011, Epic moved to exclude Lloyd's reports and testimony [D.E. 620]. The motion and SK's opposition were fully briefed. On November 30, 2011, the court held a hearing on Epic's motion to exclude. On December 22, 2011, the court granted Epic's motion to exclude expert evidence from Lloyd regarding SK's damages and in rebuttal to Epic's damages. See Lloyd Order [D.E. 697]. The court determined that Lloyd's reports and proposed testimony were based on an unreliable methodology and therefore were not admissible. Id. 10–32.

B.

In opposing Epic's motion to exclude, SK initially focuses on whether Epic complied with Rule 26(a)(1)(A)(iii) and Rule 26(e). Specifically, SK argues that Epic's initial disclosures and supplements concerning its computation of damages under Rule 26(a)(1)(A)(iii) were inadequate. Pl.'s Mem. Opp'n Mot. Exclude [D.E. 744] 3, 9–10, 16–17; see Pl.'s Mem. Opp'n Mot. Exclude, Ex. 6 ("Epic's Initial Disclosures") 7–8. Thus, according to SK, if this court precludes SK from offering at trial evidence of, or arguments about, SK's monetary damages, then the court likewise must bar Epic from offering at trial evidence of, or arguments about, Epic's monetary damages. Pl.'s Mem. Opp'n Mot. Exclude 3, 16–17.

The court rejects SK's argument. The record shows that Epic timely produced Phillip Beutel's ("Beutel") expert report ("Beutel Report") during discovery in this case [D.E. 636-7]. Just as the Lloyd Report was SK's Rule 26(e) supplement to its Rule 26(a)(1)(A)(iii) computation, the Beutel Report constitutes Epic's Rule 26(e) supplement to its Rule 26(a)(1)(A)(iii) computation. See Fed. R. Civ. P. 26(e). The Beutel Report remains in the case; therefore, this court need not explore whether Epic's initial disclosures, independent of the Beutel Report, satisfied Rule 26(a)(1)(A)(iii). In contrast to the Beutel Report, the Lloyd Report is no longer in this case as a result of the court's December 22, 2011 ruling. Accordingly, this court must determine whether, independent of the Lloyd Report, SK complied with Rule 26(a)(1)(A)(iii) and Rule 26(e). If SK did, it may present such evidence and argument to the jury. If SK did not, the court must determine the

5

remedy under Rule 37(c)(1) for SK's non-compliance.

Not surprisingly, SK argues that, independent of the Lloyd Report, it complied with Rules 26(a)(1)(A)(iii) and 26(e). First, SK notes that it stated in its initial and first supplemental initial disclosures that it expected its damages for the various claims in its complaint to be "several million dollars . . . ." Pl.'s Mem. Opp'n Mot. Exclude 4. SK then argues that these statements were adequate damages computations. See id. However, a Rule 26(a)(1)(A)(iii) disclosure must include "more than a lump sum statement of the damages allegedly sustained." City & Cnty. of S.F. v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D. Cal. 2003). Instead, the rule "contemplates some analysis," including an analysis of the damages sought as to each claim. Id. at 221–22 (collecting cases). SK's statements that it expected its damages to be "several million dollars" lack precision and analysis. Accordingly, SK did not satisfy its Rule 26(a)(1)(A)(iii) obligation with these statements. Moreover, SK stated in the same documents that its "specific damages calculations will be the subject of expert analysis and computation." SK's Initial Disclosures 18; SK's First Supplemental Initial Disclosures 25. This statement bolsters the conclusion that SK did not intend for its "several million dollars" statement to serve as its Rule 26(a)(1)(A)(iii) disclosure. Rather, SK clearly intended to supplement under Rule 26(e).

SK also argues that it responded to Epic's request for "documents relating to . . . damages" with "several million pages of documents." Pl.'s Mem. Opp'n Mot. Exclude 4 (quotation and emphasis omitted).[1] However, SK does not contend that the disclosed documents include a specific

---

[1] Specifically, SK states that it disclosed its

(1) profit and loss statements; (2) books; (3) ledgers; (4) audited and unaudited annual reports; (5) tax returns and associated schedules; (6) every videogame development contract; (7) every amendment to those videogame development contracts; and (8) the various schedules of man-hours, expenses, and anticipated profits connected with those videogame development contracts.

Pl.'s Mem. Opp'n Mot. Exclude 2. SK also notes that it disclosed specific exhibits that may have some bearing on its damages. Id. 9.

6

damages computation. See id. Disclosing damages-related documents alone, without disclosing a computation based on such documents, does not satisfy a party's Rule 26(a)(1)(A)(iii) obligation. See, e.g., Design Strategy, Inc., 469 F.3d at 295; Bullard, 3 F. App'x at 420–21; Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (holding that defendants' disclosure of "six hundred and twenty-nine pages . . . which document[ed] and detail[ed] the basis for [defendants'] damage claim" did not satisfy Rule 26(a)(1)(A)(iii) (quotation omitted)).

Similarly, SK argues that Epic served interrogatories and requests for admission that raised damages-related issues to which SK responded. Pl.'s Mem. Opp'n Mot. Exclude 4–5; see Pl.'s Mem. Opp'n Mot. Exclude, Ex. 4 ("Epic's Second Set of Interrogatories") 9–11.[2] However, SK does not argue (or produce evidence showing) that it included in its interrogatory responses or in its responses to requests for admission specific damages computations supported by documentary evidence. See Gillum v. ICF Emergency Mgmt. Servs., L.L.C., Civil Action No. 08-314-C-M2, 2009 WL 1458200, at *3 (M.D. La. May 21, 2009) (holding that "vague assertions of damages" contained in interrogatory answers do not fulfill a party's Rule 26(a)(1)(A)(iii) obligation); cf. Fed. R. Civ. P. 26(a)(1)(A)(iii).

Next, SK argues that it produced "multiple witnesses on financial and damages related topics . . . ." Pl.'s Mem. Opp'n Mot. Exclude 5 (emphasis omitted). For example, SK notes that before deposing SK's president, Dennis Dyack ("Dyack"), and SK's chief financial officer, Mike Mays ("Mays"), under Rule 30(b)(6), Epic stated its intention to ask Dyack and Mays damages-related questions. Id. 8. SK then argues that "Epic voluntarily elected not to pursue damages inquiries" when deposing Dyack and Mays. Id. SK also contends that Epic received information about SK's

---

[2] SK attached a copy of Epic's interrogatories to its opposition memorandum. SK, however, did not attach its answers to those interrogatories. See Epic's Second Set of Interrogatories. Thus, the court does not know SK's responses. Moreover, Epic's interrogatories do not lend themselves to responses that would include specific damages computations supported by documentary evidence. Cf. Fed. R. Civ. P. 26(a)(1)(A)(iii).

7

damages during the deposition of Robert DePetris ("DePetris"), a former SK vice president. See id. 5, 8.

In response to SK's argument, Epic noted at oral argument on the motion to exclude that it did ask Mays about damages during SK's Rule 30(b)(6) deposition and that Mays stated that he "[had] not calculated an amount" of SK's damages. See Mays Dep. [D.E. 621-4] 6 (Dep. 20). As for DePetris, DePetris did testify generally as to the revenue SK expected to generate from Too Human. See DePetris Dep. [D.E. 533-18] 53–57 (Dep. 210–25). However, DePetris did not compute SK's alleged damages, much less offer documents to support such a computation. See id. Moreover, Epic correctly notes that making witnesses available is not a substitute for the computation and analysis that Rule 26(a)(1)(A)(iii) requires. See, e.g., Design Strategy, Inc., 469 F.3d at 295–96.

In Clayman v. Starwood Hotels & Resorts Worldwide, 343 F. Supp. 2d 1037 (D. Kan. 2004), plaintiff made an argument similar to SK's when trying to defend its failure to otherwise disclose a damages computation. Id. at 1047 ("Plaintiff claims that defendant has not been prejudiced because defendant had the opportunity to discover information about plaintiff's damages through the deposition of Dr. Younger, and therefore such non-compliance [with Rule 26(a)(1)(A)(iii)] is harmless."). The court rejected plaintiff's argument, holding that "defendant [was] entitled to a specific computation of plaintiff's damages, and [was] entitled to . . . the documents and other evidentiary material on which such computation is based." Id; see Sauer v. Exelon Generation Co., LLC, No. 10 C 3258, 2011 WL 3584780, at *9–10 (N.D. Ill. Aug. 15, 2011). As in Clayman, Epic's ability to depose witnesses who had some knowledge of SK's damages did not satisfy Rule 26(a)(1)(A)(iii). In sum, independent of the Lloyd Report, SK did not comply with Rule 26(a)(1)(A)(iii).

C.

Rule 26(e) required SK to supplement its Rule 26(a)(1)(A)(iii) disclosure "in a timely

manner" after SK learned that its disclosure was materially "incomplete or incorrect . . . ." See Fed. R. Civ. P. 26(e). SK did not provide a damages computation other than the ones contained in the Lloyd Report. Therefore, in light of the expiration of the period for SK to disclose its experts, see Mar. 5, 2010 Order Amending Scheduling Order 1, this court's order excluding Lloyd and his reports made SK's statement that its damages would "be the subject of expert analysis and computation," see SK's Initial Disclosures 18; SK's First Supplemental Initial Disclosures 25, materially incorrect on December 22, 2011. See Fed. R. Civ. P. 26(e)(1)(A). Moreover, the court's exclusion of the Lloyd Report resulted in SK's having failed to disclose to Epic a damages computation that complied with Rule 26(a)(1)(A)(iii). Since December 22, 2011, SK has yet to supplement its Rule 26(a)(1)(A)(iii) computation pursuant to Rule 26(e). The court therefore must determine the appropriate remedy under Rule 37.

D.

Rule 37(c)(1) gives a court discretion to preclude a party from introducing evidence to establish damages when the party fails to make a Rule 26(a)(1)(A)(iii) disclosure or fails to properly supplement its Rule 26(a)(1)(A)(iii) disclosure pursuant to Rule 26(e). See S. States, 318 F.3d at 597–98; Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512 n.10 (4th Cir. 2002); see also Gould Paper, 614 F. Supp. 2d at 490–91 (holding that defendants' statement in their Rule 26(a) disclosure that they intended to prove counterclaim damages through expert testimony, and defendants' subsequent failure to disclose such expert-based evidence, justified application of Rule 37(c)(1) to limit defendants to seeking nominal damages); AVX Corp. v. Cabot Corp., 252 F.R.D. 70, 76–81 (D. Mass. 2008) (holding that plaintiff's failure to timely supplement its damages computation subjected plaintiff to Rule 37(c)(1), and that plaintiff could not use the supplemental response in opposing defendant's motion for summary judgment). Under Rule 37(c)(1), the court's inquiry focuses on whether SK's failure to comply with Rule 26(a)(1)(A)(iii) and Rule 26(e) was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). SK has the burden of proving either

9

substantial justification or harmlessness. See, e.g., S. States, 318 F.3d at 596–98; AVX Corp., 252 F.R.D. at 78.

Two cases from other circuits are instructive in assessing whether SK's failure to comply was substantially justified or is harmless. See Fed. R. Civ. P. 37(c)(1). In MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344 (Fed. Cir. 2005), the Federal Circuit applied Fourth Circuit law and affirmed the district court's disallowance, under Rule 37(c)(1), of plaintiff's non-expert damages evidence. See id. at 1356–58. In MicroStrategy Inc., plaintiff disclosed that it intended to prove its alleged damages through an expert's testimony and his three reports. Id. at 1353. Shortly before trial, the district court excluded plaintiff's expert damages evidence, finding that the evidence was based on "a flawed methodology . . . ." Id. After the district court excluded plaintiff's expert damages evidence, plaintiff did not supplement its Rule 26(a)(1)(A)(iii) disclosure. Id. at 1356. However, at trial, plaintiff attempted to introduce non-expert evidence to prove damages. Id. The district court found that plaintiff had violated Rule 26(e) and disallowed the evidence pursuant to Rule 37(c)(1). Id. On appeal, plaintiff argued that the district court abused its discretion under Southern States and that the district court should have admitted the proffered damages evidence. Id. at 1356–57. The Federal Circuit disagreed, holding that plaintiff's new damages evidence surprised and prejudiced defendant, that plaintiff "could not cure the surprise without postponing trial and reopening discovery," and that most of the proposed evidence had been in plaintiff's possession "for over a year before trial." Id. at 1357. The Federal Circuit conceded that the proffered damages evidence was of great importance to plaintiff; however, this fact did not "tip the scale in favor of [plaintiff], particularly where [plaintiff] alone [was] to blame for creating [the] situation." Id.

The Fifth Circuit reached a similar result in CQ, Inc. v. TXU Mining Co., L.P., 565 F.3d 268, 279–80 (5th Cir. 2009). In CQ, Inc., after the district court excluded plaintiff's expert damages evidence, the court granted defendant's motion in limine to prevent plaintiff from offering other, non-expert damages evidence. Id. at 279. The district court did so after finding that plaintiff had

10

violated Rule 26(e) by failing "to provide notice of [its] alternative computations . . . ." Id. The Fifth Circuit affirmed. Id. at 280. Considering factors similar to the Southern States factors, the Fifth Circuit held that the district court did not abuse its discretion under Rule 37(c)(1). Id.[3] The Fifth Circuit cited plaintiff's failure to "offer[] any justification for its failure to disclose the damages calculations or their underlying evidence," and concluded that "given the advanced stage of the litigation, permitting the new evidence would not have been harmless." Id. Like the Federal Circuit in MicroStrategy Inc., the Fifth Circuit recognized the evidence's importance to plaintiff, but held that this factor did not establish that the district court had abused its discretion when the evidence was "not essential to [plaintiff's] underlying recovery." Id.[4]

The court follows the Federal and Fifth Circuits and excludes SK's non-expert-based damages evidence pursuant to Rule 37(c)(1). The Southern States factors support this result. See S. States, 318 F.3d at 597.

First, SK's disclosure of a new damages computation more than two years after the close of discovery and approximately one week before trial would surprise and prejudice Epic. See Def.'s Mem. Supp. Mot. Exclude 5. In opposition to this conclusion, SK argues that Epic only "cursorily alleges . . . that it has been prejudiced" and that Epic "does not provide a single supporting fact." Pl.'s Mem. Opp'n Mot. Exclude 14. However, SK's statement does not reflect Epic's argument. Epic correctly states that it "has no notice of the amount of monetary damages SK may now claim

---

[3] The Fifth Circuit considered four factors in determining whether the district court had abused its discretion: "(1) [plaintiff's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [defendant] in allowing the evidence, and (4) the availability of a continuance." CQ, Inc., 565 F.3d at 280.

[4] The Fifth Circuit also affirmed the district court's allowing plaintiff to seek damages of $110,419.17 because plaintiff, in addition to its dismissed expert damages computation, had timely disclosed a proper damages computation reflecting that amount. CQ, Inc., 565 F.3d at 280 n.7. Despite SK's suggestion to the contrary, see Pl.'s Mem. Opp'n Mot. Exclude 11, SK has never provided such an alternative computation to Epic.

11

or the calculations SK has used to determine that amount." Def.'s Mem. Supp. Mot. Exclude 5. Rule 26(a)(1)(A)(iii) and Rule 26(e) are designed to provide an opponent that computation and analysis during discovery. See AVX Corp., 252 F.R.D. at 79. The opposing party may then prepare to meet that evidence via cross examination and via evidence in its rebuttal case (such as its own expert witness). SK's failure to comply with Rule 26(a)(1)(A)(iii) and Rule 26(e) has deprived Epic of this opportunity, and thus has prejudiced Epic. Indeed, the prejudice to Epic is manifest if SK were allowed to present at trial a damages computation never revealed to Epic before it came from the witnesses' lips at trial. SK also argues that "Epic possesses the documents underlying SK's damages claims" and therefore will not be surprised by SK's damages evidence at trial. See Pl.'s Mem. Opp'n Mot. Exclude 15–16. However, SK erroneously assumes that Epic should be able to glean a computation of each category of SK's damages as to each claim from the "several million pages of documents" disclosed during discovery. Id. 4 (emphasis omitted). The court rejects this assumption and finds that Epic would be surprised and profoundly prejudiced by whatever new computation of damages SK might seek to propound and support.

Second, the trial will begin on May 14, 2012. Witnesses are scheduled to come from throughout the United States and Canada. Even if SK immediately provided Epic with a new damages computation supported by documentary evidence, SK's new computation would not cure Epic's surprise and prejudice. Rather, Epic undoubtedly would want to depose whoever these witnesses are about these new computations and would want to have time for Beutel to analyze and respond to the new computations. Discovery, however, is long closed, and the May 14, 2012 trial date is nigh. This court cannot cure the surprise SK's untimely disclosure would cause without cancelling the trial and rescheduling it. The case has been pending since 2007 and the trial has been set. Good cause simply does not exist to delay trial and reopen discovery. See MicroStrategy Inc., 429 F.3d at 1357 ("[Plaintiff] could not cure the surprise without postponing trial and reopening

12

Case 5:07-cv-00275-D   Document 761   Filed 05/07/12   Page 12 of 17

discovery.").[5]

Third, SK does not adequately explain its failure, either during discovery or in the almost five months since the court issued its December 22, 2011 order excluding Lloyd and his reports, to provide Epic with a damages computation in compliance with Rule 26(a)(1)(A)(iii) and Rule 26(e).

Fourth, proving damages is admittedly important to SK's case; therefore, the fourth Southern States factor favors SK. However, this single factor does not tilt the scale in SK's favor when it "is only one of five [factors] . . . [and SK] alone is to blame for creating this situation," id., and when the evidence "is not essential to [SK's] underlying recovery." CQ, Inc., 565 F.3d at 280. Accordingly, Southern States supports excluding evidence and argument of SK's alleged damages pursuant to Rule 37(c)(1).

In opposition to this conclusion, SK emphasizes that its failure to supplement its Rule 26(a)(1)(A)(iii) disclosure was not in bad faith. See Pl.'s Mem. Opp'n Mot. Exclude 12–14. Thus, SK suggests that it is entitled to a warning and an opportunity to correct its mistake before the court applies "a severe sanction" and grants Epic's motion. Id. In support, SK cites Mutual Federal Savings & Loan Ass'n v. Richards & Associates, Inc., 872 F.2d 88 (4th Cir. 1989), and Hathcock v. Navistar International Transportation Corp., 53 F.3d 36 (4th Cir. 1995), for the proposition that the court must find that SK acted in bad faith before granting Epic's motion and that the court must give SK an opportunity to cure the Rule 26 violation. See Pl.'s Mem. Opp'n Mot. Exclude 12–14.

The cited cases do not help SK. Notably, in both cases, the Fourth Circuit considered whether the district courts had made the findings necessary to support default judgment sanctions under Rule 37(b). See Fed. R. Civ. P. 37(b)(2)(A)(vi); Hathcock, 53 F.3d at 40–41; Richards &

---

[5] Had SK made such supplementation shortly after the court issued its December 22, 2011 order excluding Lloyd and his reports, or after Epic first sought to exclude SK's damages evidence on January 13, 2012 [D.E. 700], this court may have been able to craft a remedy short of exclusion. However, SK's idleness until the eve of trial ensures that the second and third Southern States factors (i.e., the ability of Epic to cure the surprise and the extent to which a solution would disrupt the trial) support granting Epic's motion.

13

Assocs., 872 F.2d at 92–94. But Rule 37(b) and Rule 37(c)(1) require different analyses. In Southern States, the Fourth Circuit made clear that, unlike a default judgment sanction under Rule 37(b), an exclusion sanction under Rule 37(c)(1) need not be supported by a finding that the nondisclosing party acted in bad faith. S. States, 318 F.3d at 596 ("[E]xcluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of Rule 37(c)(1): preventing surprise and prejudice to the opposing party[;] [a]nd, requiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from that party on the exclusion issue." (citation omitted)); accord Design Strategy, Inc., 469 F.3d at 296.

Epic's motion to exclude rests on Rule 37(c)(1), not Rule 37(b). See Def.'s Mot. Exclude 1. Thus, Southern States, not Hathcock or Richards & Associates, controls the analysis. Moreover, granting Epic's motion is not "tantamount to a dismissal" of SK's claims, as SK suggests. See Pl.'s Mem. Opp'n Mot. Exclude 12. In addition to declaratory relief, see Compl. [D.E. 1] ¶¶ 152–55, SK may still seek and recover nominal damages on all of its claims. Specifically, at trial, SK will assert claims under North Carolina law for fraud, negligent misrepresentation, breach of warranty, breach of contract (under common law and statute), and unfair competition (under common law and the Unfair and Deceptive Trade Practices Act ("UDTPA")). See id. ¶¶ 93–104, 118–32, 140–51; Mar. 24, 2011 Order [D.E. 605] 1–2. Under North Carolina law, "once a cause of action is established, [a] plaintiff is entitled to recover, as a matter of law, nominal damages . . . ." Hawkins v. Hawkins, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992) (quotation and alteration omitted); see also D.G. II, LLC v. Nix, 713 S.E.2d 140, 149–50 (N.C. Ct. App. 2011) (discussing an award of nominal damages in a breach of contract action); United Leasing Corp. v. Guthrie, 192 N.C. App. 623, 634, 666 S.E.2d 504, 511 (2008) (discussing an award of nominal damages on fraud, negligent misrepresentation, and UDTPA claims); Martin-Kahill Ford Lincoln Mercury, Inc. v. Skidmore, 62 N.C. App. 736, 739, 303 S.E.2d 392, 393–94 (1983) (discussing an award of nominal damages on a breach of warranty claim). Thus, SK will be able to present evidence (e.g., testimony from one of SK's officers) that

14

Epic's alleged conduct damaged SK, but will not be allowed to provide a computation of damages.[6] Moreover, in accordance with the North Carolina pattern jury instructions, the court will instruct the jury to award nominal damages (i.e., $1.00) on any claim that it finds that SK proved.

In opposing Epic's motion, SK also cites two district court opinions in which courts have declined to exclude evidence under Rule 37(c)(1). See Pl.'s Mem. Opp'n Mot. Exclude 13–15. However, the cited cases are distinguishable. In Millers Capital Insurance Co. v. Big Star Tobacco Warehouse of Wilson, N.C., No. 5:00-CV-739-BO(2), 2001 WL 36105902 (E.D.N.C. Nov. 27, 2001) (unpublished), the court held that "exclusion of testimony under [Rule 37(c)(1) is] a severe sanction, appropriate only for willful and substantial abuse of the discovery process." Id. at *6. Because the court found that defendant's failure to timely disclose its expert witnesses' reports under Rule 26(a)(2)(B) had been a negligent mistake that defendant was willing and able to correct well before the yet-to-be-scheduled trial, the court denied plaintiff's motion to exclude defendant's experts from testifying. Id. However, Millers Capital predated the Fourth Circuit's decision in Southern States. In Southern States, the Fourth Circuit effectively overruled the portion of the Millers Capital court's opinion requiring a finding of "willful and substantial abuse of the discovery process" to invoke Rule 37(c)(1). Compare Millers Capital, 2001 WL 36105902, at *6, with S. States, 318 F.3d at 597–98.[7]

---

[6] The amount of such evidence that SK will be allowed to introduce at trial will be subject to the court's discretion under Federal Rule of Evidence 403 given that SK is limited to recovering nominal damages on each of its claims.

[7] Moreover, Millers Capital is factually distinguishable. In Millers Capital, the court rested its decision in part on defendant's willingness to immediately disclose the evidence at issue, and the fact that plaintiff would receive this evidence well before trial. See Millers Capital, 2001 WL 36105902, at *5–6. Here, in contrast, SK has known that its Rule 26(a)(1)(A)(iii) disclosure was inaccurate since the court issued its order excluding Lloyd and his reports on December 22, 2011. Moreover, SK has known of Epic's alleged prejudice from SK's failure to disclose an alternative damages computation since Epic first sought to exclude evidence of and argument on SK's damages on January 13, 2012 [D.E. 700]. Nonetheless, SK still has not provided a new damages computation to Epic, and the trial will begin on May 14, 2012. SK suggests that it is willing and able to

15

Additionally, SK relies on Carotek, Inc. v. Textron Fastening Systems, Inc., Civil Action No. 3:05-CV-395-MKR-DCK, 2008 WL 1777829 (W.D.N.C. Apr. 16, 2008) (unpublished). See Pl.'s Mem. Opp'n Mot. Exclude 15. In Carotek, Inc., the court applied the Southern States factors and determined that defendant's failure to disclose certain documents that plaintiff had requested during discovery did not support excluding those documents. Carotek, Inc., 2008 WL 1777829, at *3–4. The court found that plaintiff could have mitigated any surprise that it incurred by "avail[ing] itself of discovery mechanisms . . . in a more timely fashion" and that defendant's failure to disclose the documents stemmed from defendant's good faith and reasonable belief that plaintiff already possessed the documents. Id. In addition, the case had yet to be scheduled for trial. Id. at *4. Unlike in Carotek, Inc., discovery here had ended when SK's Rule 26(a)(1)(A)(iii) disclosure became inadequate. Accordingly, Epic's only remedy for SK's failure to attempt to supplement its disclosure was Epic's Rule 37(c)(1) motion, which Epic made promptly. Moreover, as noted, after the court issued its order excluding Lloyd and his reports, SK could not have credibly believed that its Rule 26(a)(1)(A)(iii) disclosure was adequate. Carotek, Inc. merely reflects the principle that the outcome of Southern States's prescribed balancing test is fact-specific. The facts here, unlike those in Carotek, Inc., support exclusion.

Finally, nothing in this order precludes SK from presenting financial information or other evidence to undercut Epic's damages calculations. Notably, at oral argument on the motion to exclude, the parties discussed whether certain money that SK received from Microsoft was revenue or a loan. They also referenced certain costs that may arguably be deducted in calculating Epic's

---

supplement its Rule 26(a)(1)(A)(iii) disclosure "if the Court believes that SK should somehow provide further information regarding its damages to Epic before trial . . . ." Pl.'s Mem. Opp'n Mot. Exclude 16. SK's belated attempt to supplement its Rule 26(a)(1)(A)(iii) disclosure, however, falls short. Unlike the Millers Capital defendant's credible statement that it would cure its Rule 26 violation in a way that would mitigate plaintiff's prejudice, SK's offer to supplement its Rule 26(a)(1)(A)(iii) disclosure would not cure the obvious prejudice to Epic.

16

damages on its copyright counterclaim. Nothing in this order prevents SK from presenting relevant evidence on damages in defending against any of Epic's counterclaims.

II.

In sum, in accordance with this order, the court GRANTS IN PART Epic's motion to exclude evidence of and argument on damages from SK [D.E. 721]. The court DENIES AS MOOT Epic's motion for leave to file a motion in limine [D.E. 700].

SO ORDERED. This 7 day of May 2012.

JAMES C. DEVER III
Chief United States District Judge